## Bean et al. v. Pugh et al.

R. J. Brownback and H. M. Brownback, for plaintiffs.
William F. Dannehower, Jr., for defendants.

KNIGHT, J., May 29, 1930.—

### Findings of fact.

1. The defendants own lots Nos. 8, 9, 10 and 11 on plan of lots of Rose Terrace in West Norriton Township, said plan being recorded in Deed Book

No. 849, page 600; these lots face upon the Benjamin Franklin Highway. In the rear of the above mentioned lots, and adjoining thereto, the defendants own six additional lots. The size of each of the defendants' lots is 40 by 125 feet.

2. The plaintiffs are the owners or occupiers of real estate in the general vicinity of the defendants' premises.

3. The plaintiff, M. H. Bateman, owns a lot on which is erected a nine-room brick house. This lot immediately adjoins the defendants' premises on the east. The property is worth $8500.

4. The plaintiff, Harry Buckwalter, owns a tract of land 70 feet in front on the Benjamin Franklin Highway and 800 feet in depth. On this tract is erected a dwelling house in which Mr. Buckwalter resides. His premises are 150 feet west of those of the defendants.

5. The plaintiff, Frank S. Carver, owns a property on the highway, in which he lives. It is 300 feet to the west of the defendants' premises.

6. The plaintiff, Lewis Custer, resides on Rose Avenue about 225 feet from the defendants' premises.

7. The defendants conduct on their lots what is commonly termed an "automobile graveyard." They buy old and worn-out cars, which they bring to the "graveyard," where the usable parts are removed; the balance, consisting of the body and other parts, is junked. The defendants handle between 150 and 200 automobiles a year, and now have 125 old cars upon their premises.

8. After removing the parts that are usable or of value, the defendants turn over what is left of the car, including the body, to a man by the name of John Di Joseph for the purpose of junking.

9. Di Joseph drags the dismantled machines to a point about 150 feet from the highway and 125 feet from the rear of the Bateman house. Here the wrecks are placed in what has been described as a crater, a space surrounded by a pile of old tin about eight feet high. In this space the cars are burned and what is valuable of the residue removed as junk. As many as seven cars have been burned at one time. The burnings take place two or three times a week and have continued since September of 1929.

10. The burning bodies cause large clouds of smoke, and this smoke enters the houses of some of the plaintiffs, especially the plaintiff Bateman. Soot and pieces of burned material enter the Bateman house so that they cannot hang up clothes in the yard, have the windows open in warm weather or enjoy their porch. In addition, the burning upholstery and old rubber emits a very unpleasant odor, which further contributes to the discomfort and distress of the Bateman and Buckwalter households.

11. The business of the defendants is accompanied by noise; there is much hammering and the moving about of the old cars with a tractor. The plaintiffs are disturbed by these noises, but they do not materially affect the enjoyment of their homes.

12. There have been one or two explosions on the defendants' premises during the preceding six months, but these explosions have not been frequent enough or severe enough to constitute a nuisance or endanger the safety or properties of the plaintiffs.

13. The immediate neighborhood is mixed in character; there are two gasoline service stations, a garage, auction room and eating places within close proximity of the "graveyard" and the home of the plaintiffs. In the general vicinity, however, the number of dwellings exceeds the number of business places.

562

## Discussion.

The right of the plaintiffs to the use and enjoyment of their own property cannot be questioned. The general obligation of the defendants so to use their property as not to injure others is equally clear. The plaintiffs complain that the use and enjoyment of their homes has been impaired by the smoke, odor and noise emanating from the defendants' automobile "graveyard."

These business enterprises are newcomers in the category of alleged nuisances, and we have been unable to find a case where it has been sought to restrain their operation. That the business of the defendants is not a nuisance *per se* is apparent; that it may become a nuisance when conducted in a residential neighborhood is just as clear.

We have found the neighborhood in question one of mixed character, both residential and business. The number of residences greatly predominates over the number of business properties, and the latter are not manufacturing enterprises but stores, service stations and wayside refreshment places, such as are usually found along arterial highways on the outskirts of congested areas of population. The frequent burning of automobile bodies, with the consequent emission of smoke, soot and unpleasant odors, in such a neighborhood, is a nuisance. These agencies enter into the home of at least one of the plaintiffs, Bateman, subject him and his family to discomfort and distress, prevent them from opening their windows in warm weather, deprive them to a large extent of the use of their porch, and depreciate the value of the home.

On the other hand, the noise caused by the moving and tearing apart of the automobiles, and the removal of parts, is not so unreasonable as to be the subject of equitable restraint. It is, at most, an annoyance or inconvenience of a kind incident to the neighborhood and surroundings.

The principal objection to the defendants' "graveyard" is the unsightly appearance that it presents, but equity is powerless to restrain those things which only affect the taste, the personal pleasure or preference of the individual.

From the foregoing facts, and discussion of those facts, we draw the following

## Conclusions of law:

1. Equity has jurisdiction.
2. The burning of cars, as conducted by the defendants, constitutes a nuisance.
3. The plaintiffs are entitled to an injunction, restraining the defendants, their agents or employees, from burning automobile bodies or parts in the manner now practiced upon the premises described in the bill, and from permitting the same to be done by others.
4. The defendants should pay the costs.

## Decree.

And now, May 29, 1930, after final hearing, it is ordered, adjudged and decreed that the prothonotary mark these findings of fact and conclusions of law filed, thereafter to become a part of the record of the case, and enter the following decree *nisi:*

And now, May 29, 1930, is is ordered, adjudged and decreed that an injunction be issued, restraining the defendants, their agents or employees, from burning automobile bodies or parts in the manner now practiced upon the premises described in the bill, and from permitting the same to be done by others; and that the defendants pay the costs.

The prothonotary is further ordered and directed to give counsel in the case notice, as required by the rules of equity practice, that unless exceptions thereto are filed within ten days of this date, the decree entered above *nisi* will become the final decree as of course.

From Aaron S. Swartz, Jr., Norristown, Pa.